**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PUBLIC CITIZEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil No. 21-cv-01408 (APM)** |
| | ) |
| **U.S. DEPARTMENT OF AGRICULTURE,** | ) |
| | ) |
| **Defendant.** | ) |

**<u>MEMORANDUM OPINION</u>**

**I.**

Plaintiff Public Citizen filed this Freedom of Information Act ("FOIA") suit seeking information pertaining to the operations of certain meat- and poultry-processing facilities during the early months of the COVID-19 pandemic. Defendant U.S. Department of Agriculture ("USDA") produced thousands of pages of responsive material, but it withheld portions of four records based on FOIA Exemption 4. According to USDA, the withheld information contains confidential commercial information that USDA obtained from meat- and poultry-processing facilities and a trade association. Plaintiff challenges that assertion.

The parties' cross-motions for summary judgment are now before the court. For the reasons that follow, the court grants Plaintiff's motion as to all withholdings due to USDA's failure of proof.

**II.**

This suit arises from Plaintiff's FOIA request submitted to USDA on May 1, 2020. The request sought: (1) communications between USDA officials or staff and representatives of certain

meat- and poultry-processing plants "related to COVID-19, the coronavirus, and/or plant closures, slowdowns, or openings"; (2) communications between USDA and the Department of Labor "relating to poultry, beef, and pork slaughter and/or processing facilities, and COVID-19 or the coronavirus"; and (3) all records regarding worker safety or occupational health at such facilities concerning the pandemic.  Compl., ECF No. 1, ¶ 5.  Plaintiff asked for expedited processing of its FOIA request, which USDA granted.  *Id.* ¶¶ 6, 8.  USDA produced thousands of pages on a rolling basis, but it withheld some responsive materials.  Def.'s Mot. for Summ. J., ECF No. 15 [hereinafter Def.'s Mot.], Def's Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J., ECF No. 15-1 [hereinafter Def.'s Mem.], at 5–6.  To the parties' credit, through diligent efforts they were able to narrow the records in dispute to only four.  *See generally* Def.'s Mot., Ex. 1, ECF No. 15-3 [hereinafter Ex. 1], Attachment F [hereinafter Vaughn Index].  They are identified as numbers 1, 2, 4, and 5 on the agency's Vaughn Index.[1]  The contested withholdings are premised on Exemption 4.

### III.

The court begins with the governing legal principles.  Exemption 4 is designed to prevent disclosure of "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential."  5 U.S.C. § 552(b)(4).  Information is not subject to disclosure under Exemption 4 if it is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential."  *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  Information is considered confidential if it is "customarily and actually treated as private by its owner."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019).

---

[1] Initially, there were six records at issue, but Plaintiff withdrew objections to two.  Pl.'s Cross-Mot. for Summ. J., ECF No. 16 [hereinafter Pl.'s Cross-Mot.],  Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. & in Opp'n to Def.'s Mot. for Summ. J., ECF No. 16 [hereinafter Pl.'s Mem.], at 5.  Vaughn Index Entries 3 and 6 therefore are no longer at issue.

The agency bears the burden "of proving that the documents are exempt from disclosure," and this burden does not shift "[e]ven when the requester files a motion for summary judgment." *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999) (internal marks omitted) (quoting *Nat'l Ass'n of Gov't Emps. v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

## A.

The court addresses Vaughn Index Entries 1 and 2 together because the parties do the same. Def.'s Mem. at 9–14; Pl.'s Cross-Mot. for Summ. J., ECF 16 [hereinafter Pl.'s Cross-Mot.], Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. & in Opp'n to Def.'s Mot., ECF No. 16 [hereinafter Pl.'s Mem.], at 8–17. Vaughn Index Entry 1 is a letter from Smithfield Foods, a pork producer and food-processing company, sent to the South Dakota Department of Health, which in turn sent it to USDA. The withheld portions of the letter reflect "potential operational changes at a Smithfield facility" in Sioux Falls "and a summary of the steps that Smithfield was taking to adhere with federal guidance issued by the Occupational Safety Health Administration . . . , the Center for Disease Control and Prevention . . . , and Executive Order 13,917." Vaughn Index at 1. Vaughn Index Entry 2 is a reopening plan for the same Smithfield Sioux Falls facility that the company directly submitted to USDA. Vaughn Index at 3. This Entry details "the operational actions planned with the reopening of a Smithfield meat processing facility in Sioux Falls, South Dakota," and the withheld portions specifically describe "Smithfield's internal processes, protective measures, and protocols for addressing health and safety guidance and regulatory requirements during the COVID-19 pandemic." *Id.* The withheld portions for Entry 2 also "include a reopening timetable that includes reopening dates, departments, harvesting capacity, and the number of affected employees in each department." *Id.* USDA says that these records are "confidential" for purposes of Exemption 4. Def.'s Mem. at 14–15.

USDA cannot meet its burden as to these records because its factual proffer rests entirely on inadmissible hearsay. *See* Pl.'s Mem. at 17. Motions for summary judgment in FOIA suits, as in all cases, are governed by Federal Rule of Civil Procedure 56. *See Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). Rule 56(c)(1)(B) provides, in relevant part, that "[a] party asserting that a fact cannot be" can make such showing by establishing that the "adverse party cannot produce admissible evidence to support the fact." The rules regarding the admissibility of hearsay statements apply at the summary judgment stage. *See Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (stating that "sheer hearsay" "counts for nothing" on summary judgment); *id.* ("While a nonmovant is not required to produce evidence in a form that would be admissible at trial, the evidence still must be capable of being converted into admissible evidence.").

In FOIA cases, courts have relaxed the rule against hearsay for some purposes. "[C]ourts may consider hearsay in FOIA cases when assessing the adequacy of the agency's search" and "FOIA declarants may rely on information obtained through inter-agency consultation." *Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019); *see also DiBacco v. U.S. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) (holding that information relayed from subordinates to a declarant in a FOIA action satisfied the personal knowledge requirement of Rule 56). But "it is a different matter to rely on out-of-court statements from private third-parties to justify an agency's withholding." *Humane Soc'y*, 386 F. Supp. at 44. *See also Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 49 (D.D.C. 2021) ("[C]ourts have declined to adopt a permissive approach to hearsay in all aspects of FOIA cases and thus, for example, have rejected as impermissible hearsay an agency's invocation of FOIA exceptions reliant on out-of-court statements by private third parties.").

4

That is particularly true with respect to Exemption 4.  Courts consistently have rejected hearsay statements offered to support the exemption.  Perhaps most notably, in *Brown v. Perez*, the Tenth Circuit flatly refused to consider on hearsay grounds a letter from a third-party owner claiming its information was confidential.  835 F.3d 1223, 1232 (10th Cir. 2016).  No company representative had filed an affidavit, and the agency's declaration did not say that a representative would be prepared to testify at a trial about the letter's contents.  *See id.*  "Because the agency has not shown the letter or its contents would be admissible at trial," the Tenth Circuit held, "we may not consider it on summary judgment."  *Id.* at 1232–33.

Courts in this District have done the same.  Two recent cases illustrate the point. In *Leopold v. Department of Justice*, the court declined to consider letters written by lawyers of the third-party whose information was at issue.  No. 19-cv-3192 (RC), 2021 WL 124489, at *6 (D.D.C. Jan. 13, 2021).  The court explained that "[e]ach letter is a statement made out of court and the government has not established the applicability of any hearsay exception."  *Id.*  The court also observed that "[t]he government could have, and probably should have, obtained sworn declarations from these agencies to support the claimed exemptions—such efforts would have been reasonable."  *Id.*  Similarly, in *Humane Society International v. U.S. Fish & Wildlife Service*, the court refused to consider third-party objections to disclosure that "were not notarized and were not made under the penalty of perjury."  No. 16-cv-720 (TJK), 2021 WL 1197726, at *4 (D.D.C. Mar. 29, 2021).  The court faulted the defendants for "mak[ing] no argument explaining why the Court should consider [the objections'] content" and for not "request[ing] time to cure them."  *Id.*

Here, USDA's only evidence as to Vaughn Index Entries 1 and 2 is inadmissible hearsay. It takes the form of a letter from Smithfield's outside counsel to USDA dated August 7, 2020 (after Plaintiff's FOIA request but before it filed suit).  *See* Def.'s Mem. at 14 (citing Def.'s Mot., Ex. 1,

Decl. of Alexis Graves [hereinafter Graves Decl.], ¶ 24); Def.'s Mot., Ex. 1, Attachment G [hereinafter Smithfield Letter], at 74 (CM/ECF pagination)).  USDA parrots Smithfield's assertion that because "only a handful of Smithfield's 55,000 employees were privy" to the contents of the letter to the South Dakota Department of Health, and that "fewer than ten of its employees were involved in the development of its COVID-19 response in conjunction with federal and state government," the records are confidential.  Vaugn Index at 3.  But USDA nowhere explains how the Smithfield Letter can be converted into admissible evidence: it identifies no hearsay exception that would make the correspondence admissible, nor does it suggest that a Smithfield representative would testify under oath to its contents.  The court therefore cannot consider the Smithfield Letter and, because USDA has offered no other evidence in support of Vaughn Entries 1 and 2, the court is compelled to grant summary judgment in favor of Plaintiff.

Before moving on, the court must note that USDA admits that the Smithfield Letter contains inadmissible hearsay but, inexplicably, does not fully abandon its reliance on the letter. USDA's opening brief urged that the Smithfield information was confidential for a different reason: because USDA had offered Smithfield an express assurance of confidentiality when it submitted information to the agency.  Def.'s Mem. at 18 (citing Graves Decl. ¶ 31).  To support that fact, USDA relied on Smithfield's representation that "a former Undersecretary for Food Safety, Mindy Brashears, provided Smithfield an explicit assurance of confidentiality during an April 21, 2020, teleconference."  Graves Decl. ¶ 31 (citing Smithfield Letter).  After Plaintiff objected on the grounds of hearsay, *see* Pl.'s Mem. at 23–24, USDA withdrew that asserted fact, citing Plaintiff's objection to the "unsworn letter," *see* Def.'s Reply in Supp. of Def.'s Mot. & Opp'n to Pl.'s Cross-Mot., ECF No. 20, at 5.  Yet, USDA did not back away from the Smithfield Letter's other factual contention—that the company kept the disputed records closely held—even

though Plaintiff also objected to it on hearsay grounds.  *See id.* at 4.  USDA cannot have it both ways: the Smithfield Letter is hearsay or it is not.  It is inadmissible hearsay.

**B.**

USDA's withholdings as to Vaughn Index Entry 4 likewise fail because they are not supported by admissible evidence.  Those records are emails the Vice President of a trade association, the National Chicken Council ("NCC"), sent to Ms. Brashears, requesting USDA's intervention in a local government's efforts to implement vigorous COVID-19 transmission management measures at a particular poultry plant.  Vaughn Index at 6.  USDA withheld "portions of emails that reference specific processing facilities that, when read in tandem with the portions of the email that USDA has released, would reveal confidential commercial information—specifically, the facility's discussions with local regulators about its ability to operate during the pandemic and the health and safety requirements that the facility was implementing."  *Id.*  That assertion, however, rests exclusively on what it was told by NCC—via email.  *See* Graves Decl. ¶ 25 ("Submitter NCC advised . . . .") (citing Def.'s Mot., Ex. 1, Attachment H at 78–82).  The email and its contents are hearsay.  With no admissible evidence to support the withholdings of Vaughn Index Entry 4, the court grants summary judgment in favor of Plaintiff as to that record.

**C.**

Plaintiff prevails as to Vaughn Index Entry 5 not because of a lack of admissible proof but a lack of any proof whatsoever.  The Entry 5 records consist of a large spreadsheet and internal briefing documents created by USDA "based on submitter submissions and inspections during the early stages of the COVID-19 pandemic."  Vaughn Index at 8.  The records include data on an "impacted company's daily slaughter capacities under normal operations, daily slaughter capacities in pandemic conditions, proposed re-opening dates, and in some instances feedback

from state actors on mitigation efforts, and absenteeism rates." *Id.* at 8–9.  USDA did not withhold the data but did redact the names of the meat- and poultry-processors so as not to identify any particular company with the data.  According to USDA, release of the companies' names "would provide competitors insight on operational weakness during the ongoing pandemic, which could be exploited by local competitors." *Id.* at 9; *see also* Def.'s Mot., Def.'s Statement of Material Facts, ECF No. 15-2, ¶ 24 ("Recognizing the closely held nature in which meat and poultry processors hold confidential commercial information such as reduced outputs, and other confidential commercial information like absenteeism rates, planned reopening dates and details regarding engagement with regulator authorities, USDA appropriately marked its internal charts, (sic) briefs compiling this information 'privileged', 'confidential', 'or internal use,' and 'not for public dissemination.'").  USDA further says that disclosure "would also undermine USDA's efforts to combat supply chain issues," and there "was an implied assurance of confidentiality" given to the companies who provided the information.  Vaughn Index at 9.  Also, as a sign of how it viewed the information, USDA marked it as "internal" and "not for public release." *Id.* at 8.

USDA's position is flawed because it is not supported by any proof that the *owners* of the information treated it as private.  *See* Graves Decl. ¶ 26.  The confidentiality inquiry centers on "how the particular party customarily treats the information, *not* how the industry as a whole treats the information." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001) (emphasis added); *see also Renewable Fuels Ass'n v. EPA*, 519 F. Supp. 3d 1, 10 (D.D.C. 2021) (emphasis added) (internal quotation marks and citation omitted).  Thus, it was imperative that USDA come forward with admissible statements from the companies themselves. The agency's impression of how the industry typically views the withheld information is not enough.  Ultimately, the court agrees with Plaintiff that "by failing to submit any evidence

regarding whether *the poultry and meatpacking companies* customarily or actually treat the information as private, USDA has failed to satisfy [its] burden" of showing that the information is confidential.  Pl.'s Reply Mem. in Further Supp. of Pl.'s Cross-Mot., ECF No. 22, at 17 (emphasis added).  The court therefore grants Plaintiff's cross-motion for summary judgment as to the withheld information in Vaughn Index Entry 5.[2]

## V.

For the foregoing reasons, the court grants Plaintiff's motion for summary judgment and denies USDA's motion for summary judgment.  A final, appealable order accompanies this Memorandum Opinion.

Dated:  August 5, 2022

Amit P. Mehta
United States District Judge

---

[2] Because the court grants Plaintiff's motion due to USDA's failure of proof, the court need not address Plaintiff's various arguments on the merits of whether Exemption 4 applies.